# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MICHELLE R. MATTOX,<br>　　　　　Appellant, | DOCKET NUMBER<br>DA-0845-18-0070-I-1 |
| v. | |
| OFFICE OF PERSONNEL<br>　MANAGEMENT,<br>　　　　　Agency. | DATE: March 26, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Michelle R. Mattox</u>, Stilwell, Oklahoma, pro se.

<u>Michael Shipley</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision that affirmed the November 7, 2017 reconsideration decision by the Office of Personnel Management (OPM), which found that she received an overpayment of $9,456.42 in Federal Employees' Retirement System (FERS) annuity benefits. For the reasons discussed below, we GRANT the appellant's petition, VACATE

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision, and REMAND the case to OPM to recalculate the amount of the overpayment, if any, and issue a new reconsideration decision consistent with this Remand Order.

## BACKGROUND

On November 4, 2013, the appellant, who was then an employee of the Department of Veterans Affairs (DVA), submitted an application for disability retirement under FERS. Initial Appeal File (IAF), Tab 14 at 37-45. By letter dated September 15, 2014, OPM informed the appellant that her application had been approved. *Id.* at 58. The appellant was separated from the DVA on September 19, 2014, and shortly thereafter OPM began providing interim pay based on a starting date of November 1, 2013. *Id.* at 4. On December 2, 2014, OPM authorized a regular annuity retroactive to August 27, 2014, based on a last day of pay (LDOP) of August 26, 2014.[2] *Id.*; *see* 5 C.F.R. § 844.301 (providing that a FERS disability annuity commences on the day after the employee separates or the day after pay ceases and the employee meets the requirements for a disability annuity).

Subsequently, OPM determined that the appellant had received an overpayment of $11,696.71 due to the discrepancy between the interim payments she had received for the period from November 1, 2013, to November 30, 2014, and the annuity she actually was due for the period from August 27 to November 30, 2014. IAF, Tab 14 at 21-22. On December 7, 2014, OPM informed the appellant of the alleged overpayment. *Mattox v. Office of Personnel Management*, MSPB Docket No. DA-0845-15-0449-I-1, Final Order (Mar. 9, 2016). OPM affirmed its calculation in a June 10, 2015 reconsideration decision, and the appellant filed a timely appeal with the Board. *Id.* While that appeal was

---

[2] The regular annuity was reduced due to the appellant's receipt of Social Security disability benefits beginning February 1, 2014. IAF, Tab 14 at 4, 25; *see* 5 U.S.C. § 8452(a).

pending, OPM rescinded its June 10, 2015 decision, and the Board dismissed the appeal for lack of jurisdiction. *Id.*

On February 16, 2017, OPM notified the appellant that it had received information from DVA that her LDOP had been changed to May 19, 2014. IAF, Tab 14 at 14. OPM indicated that it had adjusted the starting date and amount of her annuity to match the revised LDOP and calculated that an overpayment of $9,456.42 had accrued from May 20, 2014, to January 30, 2017.[3] *Id.* at 14-15. OPM proposed to collect that amount in 36 installments of $262.67, beginning May 1, 2017, and a final installment of $0.30. *Id.* at 15. The appellant submitted a request for reconsideration in which she asserted that OPM had based its calculation on an incorrect LDOP. *Id.* at 11, 13. She also requested a "waiver" of recovery, though it appears her intent was to dispute the existence and amount of the overpayment. *Id.*

On November 6, 2017, OPM issued a second reconsideration decision, reaffirming its calculation that the appellant had been overpaid $9,456.42. *Id.* at 6. Regarding the LDOP, OPM stated that it had contacted an individual (S.M.) in the DVA payroll office, who informed OPM of the following: that the appellant was last at work on December 20, 2013; that she entered leave without pay (LWOP) status; that while she was in LWOP she received donated leave, and thus an additional paycheck; and that based on the receipt of donated leave her LDOP was May 19, 2014. *Id.* at 8, 10. OPM further found that, while the appellant was not at fault for the overpayment, she was not entitled to a waiver of recovery. *Id.* at 7-8. OPM indicated it would collect the overpayment in 36 installments of $262.67, beginning February 1, 2018, and a final installment of $0.30. *Id.* at 15.

---

[3] The alleged overpayment appears to have actually accrued during the period between November 1, 2013, and May 19, 2014. OPM's computation sheet indicates that, notwithstanding a reduction in the appellant's monthly annuity, she was *underpaid* $1,940.29 in gross annuity benefits between May 20, 2014, and January 30, 2017, apparently due to the change in LDOP. IAF, Tab 14.

This appeal followed. IAF, Tab 1. The appellant argued, among other things, that OPM had relied on an incorrect LDOP and that her bank records showed that a January 17, 2014 deposit from Defense Finance and Accounting Services (DFAS) was the last payment she received from her employment at DVA. IAF, Tab 1 at 5, Tab 19 at 5, 35; Hearing Compact Disc (HCD) (testimony of the appellant). She explained that subsequent payments from DFAS were for her husband, who was also a Federal employee. IAF, Tab 19 at 5, 26-27, 34-35, Tab 26 at 4-9; HCD (testimony of the appellant). In support of its position, OPM provided a handwritten Report of Contact, dated October 25, 2017, describing a telephone conversation in which S.M. informed the inquiring OPM employee that the appellant received donated leave resulting in an LDOP of May 19, 2014. IAF, Tab 14 at 10. OPM also provided an undated form recording an inquiry to DFAS, which also indicated that May 19, 2014, was the appellant's LDOP. *Id.* at 23.

Based on her review of the record, the administrative judge concluded that May 19, 2014, was the correct LDOP and that OPM had established the existence and amount of the overpayment. IAF, Tab 28, Initial Decision (ID) at 4-7. She further found that the appellant had not shown that she was entitled to a waiver of recovery or an adjustment to the collection schedule. ID at 7-10. Finally, she found that the appellant failed to establish her claims that OPM committed harmful procedural error, denied her due process, and retaliated against her for her previous Board appeal. ID at 10-14. Accordingly, the administrative judge affirmed OPM's reconsideration decision. ID at 1, 14.

In her petition for review, the appellant states that on March 23, 2018, she contacted S.M., the same individual referred to in OPM's report of contact. Petition for Review (PFR) File, Tab 1 at 3. According to the appellant's statement, S.M. indicated that she entered LWOP status on December 12, 2013, and remained in LWOP throughout the following year until her separation on December 19, 2014. *Id.* The appellant also provides a partially cropped printout

labeled "Separated Employee Information," indicating the appellant's daily leave status for a period ranging from December 2013 to September 2014.[4]  *Id.* at 4-9.

In its response, the agency asserts in general terms that the appellant's petition does not meet the criteria for review under 5 C.F.R. § 1201.115.  PFR File, Tab 4.  In reply, the appellant argues that her newly submitted evidence shows she was not receiving pay in May 2014.  PFR File, Tab 5.

## ANALYSIS

In an overpayment case, OPM bears the burden of proving the existence and amount of the alleged overpayment by preponderant evidence.[5]  *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); *see* 5 C.F.R. § 845.307(a).  Here, as discussed above, the existence and amount of the alleged overpayment turns on the starting date of the appellant's entitlement to an annuity, which in turn depends on her LDOP.  *See* 5 C.F.R. § 844.301.  Thus, contrary to the initial decision, ID at 4-6, the burden of establishing the correct LDOP lies with OPM, not the appellant.

In support of its position that the appellant's LDOP was May 19, 2014, the agency relies on unsworn hearsay of unknown degree.  IAF, Tab 14 at 10, 23. Even if we were to limit our consideration to the record below, it is doubtful whether the agency's evidence regarding the LDOP is sufficiently probative to

---

[4] More than a year after the close of the record on petition for review the appellant filed a motion seeking to submit an additional pleading, which she asserts is "based on recent events by OPM," and will show why she lost her insurance due to the current appeal. PFR File, Tab 10.  We deny this motion because the appellant has not described the nature of and need for the pleading.  5 C.F.R. § 1201.114(a)(5).  To the extent that the pleading is relevant to the issues on remand, the appellant may submit it in that proceeding consistent with the Board's regulations and the administrative judge's instructions.

[5] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

outweigh the appellant's live testimony, which is also consistent with her bank records.[6]

In any event, the appellant has now provided documentary evidence speaking directly to her pay status during the relevant time period.[7]  PFR File, Tab 1 at 4-9.  While the exact dates of the month appear to have been inadvertently cropped, the document indicates that the appellant entered LWOP status in mid-December 2013, following several days of annual leave,[8] and remained in LWOP status through her separation in September 2014.  *Id.*  Based on this information, it appears the appellant's LDOP did not occur in May 2014, but rather at some point in December 2013.  We discern no reason to doubt the authenticity of the document, which is consistent with her statements, sworn under penalty of perjury, concerning her March 23, 2018 contact with S.M.  *Id.* at 3.  Under these circumstances, we find that OPM has not established the existence and amount of the overpayment by preponderant evidence, and we therefore do not sustain its reconsideration decision.

Based on the record before us, we are unable to determine with certainty whether the appellant actually received an overpayment and, if so, the amount of

---

[6] The administrative judge noted that a June 6, 2014 deposit from DFAS in the amount of $232.32 was consistent with OPM's contention that the appellant received donated leave the previous month.  ID at 5; IAF, Tab 26 at 7.  However, the bank records are also consistent with the appellant's explanation that the payment was reimbursement for her husband's travel expenses.  HCD (testimony of the appellant).  While the appellant did not provide additional evidence to support her testimony on that point, the burden of proof lies with OPM, as discussed above.  Moreover, even if the deposit did represent payment to the appellant for donated leave, it is possible that at some point thereafter DVA retroactively shifted the donated leave to an earlier date, thereby altering in turn the appellant's LDOP, the starting date of her entitlement to disability retirement benefits, and the amount of the overpayment (if any).  *See King v. Office of Personnel Management,* 31 M.S.P.R. 679, 681 (1986).

[7] Regardless of whether the evidence was unavailable, despite the appellant's due diligence, before the close of the record below, the Board reserves the authority to consider any issue before it.  5 C.F.R. § 1201.115(e).

[8] The annual leave recorded on three dates consists of consecutive partial days of varying length, which is consistent with the appellant's assertion that her last donated leave occurred in December 2013.  PFR File, Tab 1 at 4; IAF, Tab 1 at 5.

that overpayment. Accordingly, we remand the matter to OPM for a determination of the appellant's correct LDOP, recalculation of the overpayment, if any, and issuance of a new reconsideration decision.

## ORDER

On remand, OPM shall recalculate the FERS annuity benefit to which the appellant is entitled and issue a new reconsideration decision, consistent with this Remand Order, regarding the existence and amount of any overpayment. The new reconsideration decision must provide a detailed, consistent, and readily understandable explanation of OPM's calculations. *See Nichol v. Office of Personnel Management*, 105 M.S.P.R. 201, ¶ 20 (2007). OPM shall issue the new reconsideration decision within 60 days of the date of this Order and advise the appellant of her right to file an appeal with the Board if she disagrees with that new decision. *Id.*, ¶ 21.

We further ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order. The appellant, if not notified, should ask OPM about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after OPM tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that OPM has not fully carried out the

Board's Order, and should include the dates and results of any communications with OPM.  5 C.F.R. § 1201.182(a).

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board
Washington, D.C.